**Motion to Dismiss Denied, Affirmed and Majority and Dissenting Opinions filed December 19, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00189-CV

---

## CONSOLIDATED HEALTHCARE SERVICES, LLC D/B/A A1 IMAGING CENTERS, Appellant

### V.

## MAINLAND SHOPPING CENTER, LTD., Appellee

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2016-66745**

---

### MAJORITY OPINION

Appellant Consolidated Healthcare Services, LLC, d/b/a A1 Imaging Centers (Consolidated), appeals the final summary judgment granted in favor of appellee, Mainland Shopping Centers, Ltd. (Mainland), on its breach of contract cause of action. In addition to arguing that the trial court did not err when it granted its motion for summary judgment, Mainland asserts that this court does not have jurisdiction over this appeal because Consolidated filed its notice of appeal

too late. We conclude that we have jurisdiction to consider Consolidated's appeal. We also hold that the trial court did not err when it granted Mainland's motions for summary judgment. We therefore affirm the trial court's final judgment.

## BACKGROUND

Consolidated's predecessor-in-interest leased a space in a shopping center managed by Mainland's predecessor-in-interest. Eventually, Consolidated fell behind in its rent payments. To resolve the delinquent rent issue, the parties entered into the "Agreement of Termination and Mutual Release of Lease" (Agreement).

In the Agreement, in exchange for the termination of the lease, Consolidated agreed to pay Mainland $37,375 divided into six equal payments, with a final balloon payment due on April 30, 2016. The parties also agreed that Consolidated had until that same day to sell and remove an MRI scanner located inside the leased space. The Agreement additionally provided that "the net proceeds of sale of the MRI Scanner in the Leased Premises (net of all costs of sale including but not limited to construction costs to remove the MRI Scanner and repair/rebuild the Leased Premises) shall be applied to offset the Settlement Payment." The Agreement also stated that if the MRI was not removed by the April 30 deadline, Mainland could "sell or discard the MRI Scanner as [Mainland deemed] fit." It further provided that Mainland was "entitled to reimbursement from [Consolidated] for any costs incurred in the removal of the MRI Scanner from the Leased Premises (including costs to repair/rebuild the Leased Premises)." Consolidated also agreed that it would indemnify Mainland "for any costs resulting from removal of the MRI Scanner." Finally, the Agreement gave Mainland "sole discretion to consent to or deny any proposed sale of the MRI Scanner," but Mainland could not unreasonably withhold that consent.

2

Consolidated made only the first two payments called for by the Agreement. In addition, Consolidated was unable to find a purchaser for the MRI by the April 30 deadline. Mainland filed suit alleging that Consolidated had breached the Agreement. Mainland alleged that it had incurred damages totaling at least $31,125 as a result of Consolidated's breach. Mainland also sought attorney's fees. During discovery, Mainland designated a construction expert and disclosed that the expert would testify that it would cost about $60,000 to remove the MRI from the leased space and then rebuild the exterior wall that would have to be demolished to accomplish the removal.[1]

Mainland eventually filed a traditional motion for summary judgment on its breach of contract cause of action. In the motion Mainland asserted it had established as a matter of law that Consolidated had breached the Agreement, and also that Mainland had suffered $91,097.67 as a result of the breach.[2] Consolidated simultaneously filed an amended answer and a response to Mainland's motion for summary judgment. In the amended answer Consolidated added the affirmative defense of failure to mitigate damages and also alleged that it was entitled to an offset based on the value of the MRI in Mainland's possession. Consolidated argued in its summary judgment response that Mainland's evidence was insufficient to establish it breached the contract as a matter of law because Mainland's affidavits were self-serving and not easily controverted. Consolidated also included a reference to its newly-added affirmative defense of failure to mitigate damages. Consolidated did not, however, attach any evidence to its summary judgment response.

---

[1] It was undisputed that removal of the MRI from the leased space would require the removal, and subsequent rebuilding, of the back exterior wall of the leased space.

[2] The damages were broken down as $31,125 in unpaid settlement payments required by the Agreement and $59,972.67 for the cost of removing the MRI as established by an affidavit from Mainland's construction expert.

The trial court signed an interlocutory summary judgment order granting Mainland's motion on the question of liability and damages. It awarded Mainland the entire amount of damages that it sought, $91,097,67, as well as attorney's fees in the amount of $11,640. The trial court then stated "that the only outstanding issue for the Court to decide is what credit or offset, if any, [Consolidated] may be entitled to regarding the sale of the MRI machine by [Mainland]. All other issues pled by either party are resolved by this ORDER."

Mainland then filed a second motion for summary judgment asserting both traditional and no-evidence grounds on Consolidated's failure to mitigate affirmative defense and assertion that it was entitled to an offset or credit. Mainland argued that Consolidated was not entitled to an offset or credit against the unpaid $31,125 balance because Mainland had no duty under the Agreement to sell the MRI, or to even look for a buyer. In addition, Mainland pointed out that if Consolidated had not found a buyer by the April 30 deadline, Mainland had the authority under the Agreement to simply discard the MRI. Mainland then argued Consolidated had no evidence that Mainland (1) had not exercised reasonable care to minimize damages, or (2) did anything that caused further damages. Finally, Mainland argued Consolidated had no evidence of any amount of damages that could have been avoided through the exercise of reasonable care.

Consolidated filed a response to Mainland's motion in which it asserted entitlement to a $15,000 credit or offset because Mainland had denied Consolidated the opportunity to sell the MRI because Mainland "had not seen documents from the buyer of the machine prior to sale." Consolidated attached 24 pages of emails discussing the past-due payments called for by the Agreement, abandoned patient files inside the leased space, as well as the removal of the MRI from the leased space. Consolidated did not attach any affidavits to the response

4

authenticating the emails. The emails were between several people including Ronald Hock, Consolidated's general counsel, Jeremy Roberts, counsel for Mainland, Linda Clayton, Mainland's property manager, Rick Miller with "makhealthcare," and Satheesh also with "makhealthcare." There is no evidence explaining who Rick Miller or Satheesh are, or how they are connected to the matters at issue in this appeal.

In addition, the only discussion regarding the sale of the MRI was Consolidated's belief, in early March 2016, that it had a "possible sale," with an undisclosed potential buyer, in the works where the gross proceeds could be $15,000. Hock mentioned this possible deal in an email to Roberts in which he also put forward renegotiating the Agreement to rework the payment schedule from a three-month time period to "a more reasonable repayment schedule" of 24 months. When Roberts responded that Mainland was interested but it needed to review the sale and construction proposal documents, Hock admitted that "none of those documents exist at present." Roberts then told Hock "that's fine." Roberts explained that Mainland needed "a chance to look at and approve everything before things actually get moving."

There is then a gap from the middle of March until an email sent on May 14, 2016. In that email, Roberts wrote to "Ron/Satheesh" that he was "proposing a conference call on Monday to discuss potential removal of the [MRI]. I need to be clear that removal is not currently approved and no construction whatsoever can happen at the property at this time. Please let me know if you are available at 10am cst on Monday to discuss." Satheesh responded the next day: "Thanks Jeremy [Roberts] for the call and we were able to stop my team from going to Texas. As I had mentioned, we are only directed by [Consolidated] to coordinate the removal. Financial terms [are] between you and [Consolidated] and if we are

removing next week, my team [has] to start on Monday. If not[,] it will have to be moved after 4 weeks. I am available for the call anytime tomorrow morning." This was followed by an email from Hock to Roberts on May 16 in which he asked for "Satheesh and Rick [to] work together with Linda on the premises related details, as we discussed previously. We do not want any window of opportunity to close again." Roberts responded the same day telling Hock

> Ron, all we were told is that the buyer would submit the items we needed for review in advance to us. This was never done. After speaking with Satheesh a couple days ago, we learned for the first time that the prospective buyer is not responsible for paying to restore my client's walls, proceeds from sale are not going to us, proceeds to Consolidated (that are presumably fbo landlord) are potentially lower than the cost to restore our walls, we will not have opportunity to review bill of sale or construction plans. . . As matters stand, this is not going to work. I am proposing a call to discuss this fully and ensure we are not missing any information, but for the time being this cannot proceed.

There were also emails from later in May and early June, 2016, regarding a meeting at the shopping center on June 6 to allow a contractor to examine the leased space so he could prepare a written quote for the removal of the MRI and subsequent rebuild of the exterior wall. Consolidated offered no other evidence regarding the possible sale of the MRI, the cost of removing the MRI from the leased space, or why the possible sale of the MRI did not proceed past these discussions regarding a meeting at the leased space.[3]

The trial court granted Mainland's second motion for summary judgment and signed an amended final judgment awarding Mainland damages totaling $91,097.67, attorney's fees of $11,640, prejudgment and post-judgment interest,

---

[3] There were emails from later in 2016 discussing patient files abandoned at the leased space. None of these emails address the removal of the MRI from the leased space however.

and taxable costs.  This appeal followed.[4]

ANALYSIS

## I.      We have jurisdiction over Consolidated's appeal.

We turn first to Mainland's motion to dismiss.  Mainland argues in the motion that this court does not have jurisdiction because Consolidated's notice of appeal was untimely.

This court has jurisdiction to determine our own jurisdiction.  *See Gilchrist Cmty. Ass'n v. Cty. of Galveston*, No. 14-17-00681-CV, 2018 WL 6722343, at *2 (Tex. App.—Houston [14th Dist.] Dec. 21, 2018, no pet.) (mem. op.) (citing *State v. Naylor*, 466 S.W.3d 783, 787 (Tex. 2015)).  Issues involving questions of jurisdiction are treated as questions of law.  *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

The amended final judgment in this case was signed on November 27, 2017.  Consolidated filed a motion for reconsideration on December 21, 2017.  In that motion, Consolidated re-urged the evidentiary objections it had made in response to Mainland's motion for summary judgment and it asked the trial court for an "express ruling" on them.  On March 9, 2018, Consolidated simultaneously filed an Amended Motion for Extension of Time to File Notice of Appeal and a Notice of Appeal.  Mainland argues that Consolidated's notice of appeal was untimely because the motion for reconsideration asking for evidentiary rulings did not

---

[4] During the pendency of this appeal, Mainland filed an "Appellee's Notice of Partial Release of Judgment."  Mainland has not filed a motion asking this court to take any action.  *See* Tex. R. App. P. 10.1 (Unless these rules prescribe another form, a party must apply by motion for an order or other relief.").  Nor has Consolidated filed any type of response to this notice. *See id.*  We therefore do not consider what, if any, effect this partial release of judgment may have on the final judgment at issue in this appeal.  *See id.* at 38.1(f) (providing that appellant must include in its brief "all issues or points presented for review"); 47.1 (directing that the court of appeals must hand down a written opinion that "addresses every issue raised and necessary to final disposition of the appeal.").

7

extend the timetable for filing a notice of appeal because it did not seek a substantive change in the final judgment. In making this argument, Mainland primarily relies on the Dallas Court of Appeals' opinion *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 294 (Tex. App.—Dallas 2009, no pet.). In that case, the court, in dicta, described post-judgment orders striking summary judgment evidence as collateral to the judgment and stated that they could not be "properly characterized as vacating, modifying, correcting, or reforming the judgment under Rule 329b." *Id.*

The Rules of Appellate Procedure, however, are to be construed reasonably, yet liberally. *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997). An appeal should not be dismissed "whenever any arguable interpretation of the Rules of Appellate Procedure would preserve the appeal." *Id.* A timely-filed post-judgment motion that seeks a substantive change in an existing judgment qualifies as a motion to modify under Rule 329b(g) and thus extends the trial court's plenary power as well as the amount of time a party has to perfect their appeal. *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 314 (Tex. 2000); *see Crotts v. Cole*, 480 S.W.3d 99, 102–03 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Therefore, the substance of this filing included a timely motion to modify the trial court's final order that extended the trial court's plenary power over its final order.").

In its motion for reconsideration, Consolidated re-urged its evidentiary objections, which, if sustained, would have resulted in the denial of Mainland's initial motion for summary judgment because the trial court would have been barred from giving weigh to Mainland's summary judgment evidence. Consolidated asked the trial court to reconsider those objections and to make an express ruling on them. At a minimum, the motion can be construed as a request

for inclusion of the evidentiary rulings in the judgment. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163–64 (Tex. 2018) (per curiam) (explaining that rules of error preservation apply to summary-judgment proceedings); *Torres v. Chauncey Mansell & Mueller Supply Company, Inc.*, No. 07-16-00016-CV, 2016 WL 944140, *2 (Tex. App.—Amarillo Mar. 11, 2016, per curiam order) (concluding motion to modify judgment asking trial court to rule on objections to summary judgment evidence extended appellate deadlines). Liberally construing Consolidated's motion for reconsideration however, we conclude that it sought a substantive change to the trial court's judgment, the reversal of the trial court's granting of Mainland's motion for summary judgment. It therefore extended the appellate timetable making Consolidated's notice of appeal timely filed. *Torres*, 2016 WL 944140 at *2. We thus have jurisdiction to consider Consolidated's appeal. We deny Mainland's motion to dismiss.

## II. The trial court did not err when it granted Mainland summary judgment on its claims.

Consolidated raises three issues on appeal. Consolidated argues in its first two issues that the trial court erred when it granted Mainland's motions for summary judgment on its breach of contract cause of action. Consolidated challenges the trial court's award of attorney's fees to Mainland in its third issue.

### A. Standard of review and applicable law

We review a trial court's order granting a traditional summary judgment de novo. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). In reviewing a grant of summary judgment, we consider all of the evidence in the light most favorable to the nonmovant. *Ron v. AirTran Airways, Inc.*, 397 S.W.3d 785, 788 (Tex. App.—Houston [14th Dist.] 2013, no pet.). When a plaintiff such as Mainland, moves for summary judgment on its cause of action, it must

9

conclusively prove all essential elements of its claim as a matter of law. *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Evidence is considered conclusive if reasonable people could not differ in their conclusions. *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The nonmovant has no burden to respond to a motion for summary judgment unless the movant conclusively establishes each element of its cause of action as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). If the movant establishes its entitlement to judgment, then the burden shifts to the nonmovant to come forward with competent controverting evidence sufficient to raise a genuine issue of material fact. *Muller v. Stewart Title Guar. Co.*, 525 S.W.3d 859, 868 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Once Mainland proved its entitlement to summary judgment as a matter of law, it became Consolidated's burden as the non-movant to present grounds for avoiding summary judgment. *Home Loan Corp. v. JPMorgan Chase Bank, N.A.*, 312 S.W.3d 199, 205 (Tex. App.—Houston [14th Dist.] 2010, no pet.). To avoid summary judgment by raising an affirmative defense, the non-movant must do more than merely plead the affirmative defense. *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.). In addition, the non-movant must produce sufficient evidence to conclusively prove, or at least raise a material issue of fact, as to each element of the affirmative defense. *See Wiggins v. Overstreet*, 962 S.W.2d 198, 200 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

### B. Mainland adequately pled its breach of contract cause of action, including the damages it sought.

In its second issue, Consolidated argues that the trial court erred when it

included the costs of removing the MRI from the leased space in its final summary judgment because, in Consolidated's view, this was a separate cause of action that Mainland did not plead. We disagree.

Here, the Agreement required Consolidated to remove the MRI from the leased space by April 30, 2016. It also authorized Mainland to dispose of the MRI if Consolidated had not removed it by the specified deadline. Finally, the Agreement provided that Mainland was "entitled to reimbursement from [Consolidated] for any costs incurred in the removal of the MRI Scanner from the Leased Premises (including costs to repair/rebuild the Leased Premises)." We therefore conclude that the recovery of the costs associated with the removal of the MRI from the leased space ($59,972.67) was not a separate cause of action, but was instead damages caused by Consolidated's breach. *See Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (stating elements of a breach of contract claim, which includes "the plaintiff suffered damages as a result of [the] defendant's breach."). Consolidated does not dispute that Mainland pled a breach of contract claim and alleged that it had incurred damages totaling at least $31,125 as a result of Consolidated's breach.

Texas follows a fair notice standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). A defendant may challenge the sufficiency of a plaintiff's pleading through special exceptions. *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998). A special exception is appropriate if "the pleadings are not clear or sufficiently specific or fail to plead a cause of action." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007); *see* Tex. R. Civ. P. 91. If requested by special exception, a trial court also may require a plaintiff to amend its petition to specify

11

the maximum amount of damages claimed. *Ford v. Performance Aircraft Servs., Inc.*, 178 S.W.3d 330, 335 (Tex. App.–Fort Worth 2005, pet. denied); Tex. R. Civ. P. 47.

Consolidated did not file special exceptions to Mainland's petition. We therefore liberally construe Mainland's petition in its favor to determine whether it adequately pled its breach of contract cause of action and the damages resulting from the breach. *Prudential Ins. Co. of Am. v. Fin. Review Servs, Inc.*, 29 S.W.3d 74, 81 (Tex. 2000); *Port Auth. of Harris Cty. v. Zachry Constr. Corp.*, 513 S.W.3d 543, 571 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Mainland alleged that Consolidated breached the Agreement, which provided, in part, that Mainland was "entitled to reimbursement from [Consolidated] for any costs incurred in the removal of the MRI Scanner from the Leased Premises (including costs to repair/rebuild the Leased Premises)." Mainland also alleged that it had suffered "actual damages of at least $31,125." Since there were no special exceptions filed, we conclude that this pleading adequately informed Consolidated of the minimum damages sought and gave Consolidated sufficient information that it could prepare a defense. *See Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 896–97. We overrule Consolidated's second issue.

**C.     The trial court did not err when it granted Mainland's motion for summary judgment on Mainland's breach of contract cause of action because Consolidated failed to meet its summary judgment burden in response to the motion.**

Consolidated argues in its first issue that the trial court erred when it granted Mainland's motion for summary judgment because the exhibit with 24 pages of emails Mainland included with its summary judgment response raised a genuine issue of material fact on the cost to remove the MRI from the leased space and then

rebuild the space after the removal.[5]   Consolidated specifically references one email in the 24-page exhibit in which Ronald Hock, Consolidated's general counsel, stated that he had been informed that the removal and rebuild cost would be between $5,000 and $7,500.  Mainland responds that the referenced email did not generate a material issue of fact because it was unsworn and unauthenticated. We agree.  Unauthenticated or unsworn documents, or documents not supported by any affidavit, are not entitled to consideration as summary judgment evidence. *Mayo v. Suemar Exploration & Prod. LLC*, No. 14-17-00491-CV, 2008 WL 4355259, at *5 (Tex. App.—Houston [14th Dist.] Aug. 26, 2008, pet. denied) (mem. op.).   Because the only exhibit offered by Consolidated cannot be considered, we conclude it did not create a genuine issue of material fact and the trial court did not err when it granted Mainland's motion for summary judgment on the removal costs.  *See id.* at *6 ("Accordingly, the trial court did not err in granting [movant's] no-evidence motion for summary judgment because appellant failed to present any evidence that created a genuine issue of material fact."). We overrule Consolidated's first issue on appeal.

### C.  The trial court did not err when it granted Mainland's motion for summary judgment on Mainland's attorney's fees.

Consolidated argues in its third issue that the trial court erred when it included $7,140 in attorney's fees in the final judgment because those fees were unrelated to the lawsuit.  Consolidated argues they are unrelated because the fees were incurred for legal services performed before the lawsuit was filed. Consolidated cites *Tony Gullo Motors v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006)

---

[5] Consolidated does not make any other argument that the trial court erred when it granted Mainland's motion for summary judgment on the question of the cost for the MRI removal and subsequent rebuild of the leased space.  Consolidated also does not challenge the trial court's summary judgment on the damages awarded for the amount Consolidated had not paid as required by the Agreement.

and *Schwartzott v. Maravilla Owners Association, Inc.*, 390 S.W.3d 15, 21 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) in support of its argument. We conclude that neither mandates reversal of the attorney's fee award.

In *Tony Gullo Motors*, a case involving fraud and breach of contract claims, the Texas supreme court reiterated the general rule that "fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors*, 212 S.W.3d at 311. Here, it is undisputed that Mainland seeks fees only for work connected with a breach of contract claim against a single defendant. Consolidated does not dispute that attorney's fees are recoverable in a breach of contract case.

*Schwartzott* involved a lawsuit in which a homeowners' association filed a sworn account claim against the Schwartzotts for past due homeowner's assessments. *Schwartzott*, 390 S.W.3d at 17. In addition to the attorney's fees incurred in the sworn account lawsuit, the homeowner's association also sought to recover fees associated with a separate lawsuit between the same parties. *Id.* at 21. The trial court awarded the fees when it granted the homeowner's association's motion for summary judgment. *Id.* at 18. This Court held those fees could not be recovered because the summary judgment evidence did not show "how these attorney's fees were reasonable fees for the collection of the assessments owed by the Schwartzotts to the [homeowner's] [a]ssociation." *Id.* at 21. Here, the challenged fees were not incurred as a result of some other lawsuit. The uncontroverted summary judgment evidence established instead that the fees were reasonable and necessary and were related to Mainland's breach of contract claim. Consolidated did not attach an affidavit from an attorney contesting Mainland's attorney expert's testimony that the fees were incurred in connection with the lawsuit. Mainland's uncontroverted evidence supports the trial court's award of

14

the entire amount sought by Mainland. *See Top Cat Ready Mix, LLC v. Alliance Trucking, L.P.*, No. 05-18-00175-CV, 2019 WL 275880, at *6 (Tex. App.—Dallas Jan. 22, 2019, no pet.) (mem. op.) ("The affidavit of an attorney setting forth the attorney's qualifications, opinion regarding reasonable attorney's fees, and the basis for the opinion will be sufficient to support summary judgment, if uncontroverted.") (internal quotation marks omitted); *Gaughan v. Nat'l Cutting Horse Ass'n*, 351 S.W.3d 408, 423 (Tex. App.—Fort Worth 2011, pet. denied) ("The NCHA's summary judgment established its entitlement to summary judgment as to the amount of attorney's fees, and Gaughan's arguments are mere criticisms of the amount sought without contradicting evidence."). We overrule Consolidated's third issue on appeal.

## CONCLUSION

Having denied Mainland's motion to dismiss and overruled Consolidated's issues on appeal, we affirm the trial court's final judgment.

/s/     Jerry Zimmerer
Justice

Panel consists of Justices Wise, Zimmerer, and Spain (Spain, J., dissenting).

15